# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>EFRAIN DE LA TORRE-HERNANDEZ,<br>A/K/A EFRAIN DELATORRES<br>HERNANDEZ,<br><br>　　　　Defendant. | Case No. 1:17-CR-338-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it a motion to dismiss filed by defendant Torre-Hernandez. The motion is fully briefed and at issue. For the reasons explained below, the Court will grant the motion.

## LITIGATION BACKGROUND

Torre-Hernandez has been charged with a single count of illegal reentry. The Indictment alleges that he was lawfully removed from the United States on September 13, 2013. Torre-Hernandez alleges, however, that at his removal proceeding in 2013, the presiding Immigration Judge (IJ) failed to advise him of his right to apply for voluntary departure. This failure, Torre-Hernandez argues, deprived him of his due process rights and requires that this Indictment be dismissed.

Torre-Hernandez's motion requires the Court to examine the removal proceedings conducted in 2013. Just prior to those removal proceedings, Torre-Hernandez had been

imprisoned following a conviction for illegal reentry. Upon his release in 2013, he was served with a Notice to Appear at removal proceedings before the Immigration Court. That proceeding was held on September 12, 2013, and included a group of individuals subject to removal. Addressing them as a group, the IJ explained that he would first determine if the charges of removability were true, and, if so, would then determine "whether you'll be permitted to stay here in the United States or not or whether you'll be permitted to leave voluntarily." *Transcript (Dkt. No. 16-5)* at 5:21-6:2. "Either way," he explained, "you would avoid a deportation order." *Id*. at 6:2-3. He summarized, "the purpose of these proceedings, as many of you have figured out, is to determine whether you'll be permitted to stay here in the United States or not or leave without – or leave with voluntary departure." *Id.* at 6:3-7.

The IJ then explained three fundamental rights – the right to an attorney, the right to submit evidence, and the right to appeal – and explained each right, noting that there was a free legal service provider at the facility and "they can talk to you about whether you are eligible for some type of relief that would permit you to stay here in the United States." *Id.* at 6:20-23. The IJ also informed the group that they had the right to present evidence, including evidence about why they should be allowed to remain in the United States. *Id.* at 7:12-17, 7:23-8:5. While discussing the right to appeal, the IJ stated, "I'll also be required to make a decision whether you'll be permitted to stay here and whether you're going to be deported or receive voluntary departure." *Id*. at 9:8-11. "Any time I make a decision, you have the right to file an appeal." *Id.* at 9:12-13. He asked if anyone in the group was a citizen or national of the United States. No one raised their hand, so he

proceeded and asked each individual if they wanted to proceed with or without an attorney. Torre-Hernandez said he wanted to proceed without an attorney. *Id.* at 12:13.

The IJ then questioned Torre-Hernandez individually. Torre-Hernandez admitted that he was not a citizen or national of the United States; that he was a citizen and native of Mexico; and that he entered the United States illegally on December 3, 2011. *Id*. at 14:1-16. Based on the factual admissions, the IJ found that the defendant was illegally in the United States.

The IJ then asked a series of questions "to see if you're eligible for any type of relief or for voluntary departure. If you think you may be eligible for some form of relief, please let me know so I can consider it as well." *Id*. at 16:12-15. In response to questioning, Torre-Hernandez stated that he first entered the United States in 1999. At this time, the government attorney stated that Torre-Hernandez had been removed to Mexico on at least seven prior occasions. *Id.* at 17:1-5.

The discussion turned to personal facts and Torre-Hernandez's ties to the United States. Torre-Hernandez stated that his parents were not citizens of the United States; he was single; he had two children born in the United States; and he had left the United States several times since 1999. (Id. at 17:11-23.)

Finally, the IJ asked Torre-Hernandez "Is there any type of relief you want to ask the Court for?" *Id.* at 20:15-16. Torre-Hernandez stated there was not. *Id*. at 20:17. The IJ then ordered that Torre-Hernandez be deported to Mexico. The court notified Torre-Hernandez that he had a right to appeal or he could waive appeal. Torre-Hernandez waived his right to appeal, and did not appeal the decision.

# LEGAL STANDARDS

The Due Process Clause of the Fifth Amendment requires that an alien charged with a violation of 8 U.S.C. § 1326 be given an opportunity to collaterally challenge the deportation proceedings underlying the charge. *U.S. v. Mendoza-Lopez,* 481 U.S. 828, 837-38 (1987). Accordingly, a defendant may collaterally attack his underlying removal order as violative of due process. *See* 8 U.S.C. § 1326(d).

To prevail, Torre-Hernandez must demonstrate (1) the "exhaustion of any administrative remedies that may have been available to seek relief against the order," (2) "the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review," and (3) "the entry of the order was fundamentally unfair." *U.S. v. Ramos*, 623 F.3d 672, 680 (9th Cir. 2010). An underlying deportation order is "fundamentally unfair" if (1) Torre-Hernandez's due process rights were violated by defects in his underlying deportation proceeding, and (2) Torre-Hernandez suffered prejudice as a result of the defects. *Id.*

An IJ's failure to inform an alien of his eligibility to apply for relief "relieves the alien of the burden of proving exhaustion of administrative remedies" because the waiver of the administrative appeal is "insufficiently considered and intelligent." *U.S. v. Gonzalez-Flores*, 804 F.3d 920, 927 (9th Cir. 2015). Similarly, it also proves the denial of a meaningful opportunity for judicial review because an alien has no opportunity to appeal the denial of a right he was not made aware of. *Id.*

Thus, if Torre-Hernandez establishes that his removal proceedings were fundamentally unfair, this also satisfies his obligation to demonstrate exhaustion of

administrative remedies and deprivation of judicial review. *Id.* Torre-Hernandez argues that his removal proceedings were fundamentally unfair because the IJ failed to advise him of his eligibility to apply for voluntary departure.[1] The Government responds that the IJ did so advise Torre-Hernandez, and that even if he failed to do so, Torre-Hernandez was not prejudiced.

## ANALYSIS

The record of the 2013 removal proceedings shows that the IJ (1) explained that he would determine if Torre-Hernandez qualified for voluntary departure, (2) asked a series of questions to determine if he was qualified, and (3) decided that he did not qualify. *See Transcript, supra.* The IJ never advised Torre-Hernandez of his eligibility to apply for voluntary departure. *Id.* "[W]here the record contains an inference that the petitioner is eligible for relief from deportation, the IJ must advise the alien of this possibility and give him the opportunity to develop the issue." *U.S. v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir.2000). This requirement, according to the Ninth Circuit, is "mandatory." *Id.*

Here, there was at least an inference – or a "reasonable possibility" – that Torre-Hernandez was eligible to apply for voluntary departure: (1) He had never been convicted of an aggravated felony; (2) He was not involved in terrorist activity; and (3) He had never received a voluntary departure.[2] *See* 8 U.S.C. § 1229c(a)(1), c(c)(1); 8 C.F.R. §

---

[1] Both parties agree that we are addressing pre-conclusion voluntary departure.

[2] Defense counsel argued in his brief that Torre-Hernandez had never been granted a voluntary departure previously, and thus qualified under this factor. The Government did not object to that representation and so the Court takes it as a fact.

1240.26(a) & (b); *see also U.S. v. Muro-Inclan*, 249 F.3d 1180, 1183 (9th Cir. 2001). The Government does not dispute this in its briefing.

This triggered a "mandatory" requirement that the IJ advise Torre-Hernandez that he appeared to be eligible to apply for voluntary departure, and that he could apply for it during the hearing. *Melendez-Castro,* 671 F.3d at 953. The IJ never did so. Instead, the IJ took it upon himself to determine if Torre-Hernandez qualified and concluded that he was ineligible.

The Government urges the Court to hold that this process satisfied due process – after all, the Government argues, the IJ "treated the defendant as though he had applied for voluntary departure," asked him questions concerning relevant factors, and ultimately ruled that he was ineligible. *See Government Brief (Dkt. No. 17)* at p. 9. The Government describes a process that is entirely IJ-directed, yet due process requires that the defendant be informed of his possible eligibility, and his right to apply, so he can determine himself whether he wants to apply. *See Arrieta,* 224 F.3d at 1079 (holding that the IJ must "give [the alien] the opportunity to develop the issue"); *see also U.S. v. Lachino-Estrada*, 2011 WL 4351603 at *2 (9th Cir. 2011) (unpublished) (rejecting argument that "an alien need not be expressly advised of the potential availability of voluntary departure, provided the IJ in fact considered it").

There is no small difference between the process Torre-Hernandez got, and the process due process requires. Without ever being informed that he might be eligible and could apply, a reasonable defendant would believe it was futile to appeal a ruling that he

was ineligible. But having been informed that he might be eligible and could apply, a reasonable defendant may feel empowered to pursue that remedy.

This very distinction was recognized by the Ninth Circuit in *Melendez-Castro*. There, the IJ similarly did not ask the defendant if he wanted to apply for voluntary departure. The IJ did advise the defendant that he might be eligible for voluntary departure, but "almost in the same breath" told him "without qualification that he would not get this relief." *Id.* at 954. The panel observed that "[i]t is no wonder that he did not formally apply," and held that this process violated the defendant's due process right. *Id.*

The process in this case was even more violative of due process because the IJ failed to advise Torre-Hernandez of *both* required rights – that he could apply and that he might be eligible. In *Melendez-Castro* and here, the IJ took over the process and stripped the defendant of any right to direct his own defense.

The Government argues that the IJ offered Torre-Hernandez the opportunity to apply for relief when he asked: "If you think you may be eligible for some form of relief, please let me know so I can consider it as well." *Id.* at 16:14-15. And prior to making a ruling, the IJ again asked Torre-Hernandez if there was "any type of relief you want to ask the Court for?" *Id.* But there is a profound difference between an IJ (1) asking an alien to identify the relief he may be entitled to; and (2) identifying the relief an alien may be entitled to. The Government cites no case that the former, without the latter, satisfies due process.

Torre-Hernandez "never had a genuine opportunity to apply for voluntary departure or to present evidence of the factors favoring this relief." *Id.* This defect

exempts Torre-Hernandez from the exhaustion requirement, and renders the removal decision fundamentally unfair.

The Court now turns to the issue whether Torre-Hernandez suffered prejudice as a result of the defects. He "does not have to show that he actually would have been granted relief [but only] that he had a plausible ground for relief from deportation." *Melendez-Castro,* 671 F.3d at 954-55.

Once an individual applies for voluntary departure, whether to grant relief is a discretionary decision. *Campos-Granillo v. I.N.S.*, 12 F.3d 849, 852 (9th Cir. 1993). In exercising that discretion, the IJ must weigh the relevant factors:

> Favorable factors include: family ties within the United States; residence of long duration in this country, particularly if residence began at a young age; hardship to the petitioner or petitioner's family if relief is not granted; service in the United States armed forces; a history of employment; the existence of business or property ties; evidence of value and service to the community; proof of rehabilitation if a criminal record exists; and other evidence attesting to good character. Unfavorable factors include: the nature and underlying circumstances of the exclusion or deportation ground at issue; additional violations of the immigration laws; the existence, seriousness, and recency of any criminal record; and other evidence of bad character or the undesirability of the applicant as a permanent resident.

*Id.* at 853 n.8. Torre-Hernandez had several favorable factors: (1) He had strong family ties within the United States because he had two children who were born here and were United States citizens, and his half-sister, with whom he had recently resided, had legal status; (2) he had primarily lived in the United States for the previous 14 years, coming to the United States as a young man; and (3) he had a history of employment here, having worked for a construction company from 2000 to 2008, and then for another company

and in the fields from 2009 to 2013. *See Declaration of Torre-Hernandez (Dkt. No. 16-2)*.

He also had several negative factors: (1) He had misdemeanor convictions in Idaho for disturbing the peace in 2006, and driving under the influence and disturbing the peace in 2003; (2) He had been deported in 2010, again in 2011, and he was convicted of illegal reentry in 2011; (3) After being deported in 2011, he was again convicted of illegal reentry and sentenced to 16 months imprisonment; and (4) After serving his prison time on that conviction, he violated his supervised release and was sentenced to another 8 months in prison. It was after his release from that prison sentence that he appeared at the removal proceedings at issue in this case.

The Government argues that Torre-Hernandez's criminal convictions for prior illegal reentries makes it implausible that he would be granted voluntary departure. In assessing plausibility, the focus is on "'whether aliens with similar circumstances received relief.'" *U.S. v. Gonzalez-Flores,* 804 F.3d 920, 927 (9th Cir. 2015). In a case from the Board of Immigration Appeals, a defendant was granted voluntary departure despite having "at least 6 criminal convictions for illegal entry, battery, drunkenness, threatening, a second battery, and driving under the influence." *In Re: Pineda-Castellanos,* 2005 WL 3833024 at *1 (BIA Nov. 16, 2005). In another case, the alien was granted voluntary departure despite giving "inaccurate, if not fraudulent testimony in Immigration Court" and using "aliases when apprehended and [lying] about his nationality in order to facilitate easier illegal entry into the United States." *In Re: Dimas Polanco-Davila,* 2006 WL 901504, at *2 (BIA Mar. 9, 2006). A Federal District Court in

California cited these two cases in finding it plausible that an alien who had four drunk driving convictions could be granted voluntary departure. *U.S. v. Juarez-Franco,* 2013 WL 1285105 (S.D.Cal. Mar. 27, 2013). Important in that court's analysis was that the alien had not been convicted of any drug offenses, and did not "have any serious or violent criminal history." *Id.* at *6. The court granted the alien's motion to dismiss, and dismissed the indictment for illegal reentry on the ground that the IJ's failure to advise the alien that voluntary departure was available violated his due process rights. *Id.* at *7.

Torre-Hernandez likewise has no drug or violent offenses in his background. His convictions for illegal reentries are not, under the cases cited above, automatic disqualifiers for voluntary departure. On the positive side, he has significant factors in his favor, identified above. Thus, it is at least plausible that he would have been granted voluntary departure, and he has therefore established the necessary prejudice.

## Conclusion

Torre-Hernandez has shown that his due process rights were violated and that he was prejudiced thereby. Accordingly, the Court will grant the motion to dismiss.

**ORDER**

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to dismiss (docket no. 16) is GRANTED, and the Indictment (docket no. 1) is DISMISSED.



DATED: June 20, 2018

_____
B. Lynn Winmill
Chief U.S. District Court Judge